**Electronically Filed
Intermediate Court of Appeals
CAAP-16-0000320
26-APR-2019
08:08 AM**

NO. CAAP-16-0000320

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


CORY SATO, Appellant-Appellant, v. STATE OF HAWAIʻI,
DEPARTMENT OF HUMAN SERVICES; HINDA DIAMOND, in the
official capacity as Child-Adult Protective Services
Supervisor, State of Hawaiʻi, Department of Human Services,
Social Services Division; MILIAMA ILOILO, in the official
capacity as Child-Adult Protective Services Specialist,
State of Hawaiʻi, Department of Human Services, Social
Services Division; and LANE T. ISHIDA, Hearing Officer,
State of Hawaiʻi, Department of Human Services,
Administrative Appeals Office, Appellees-Appellees

APPEAL FROM THE CIRCUIT COURT OF THE FIRSR CIRCUIT
(CIVIL NO. 15-1-2000)


SUMMARY DISPOSITION ORDER
(By: Ginoza, C.J., and Leonard and Reifurth, JJ.)

The Decision issued by Department of Human Services
("DHS") Hearing Officer Lane T. Ishida ("Hearing Officer") on
September 16, 2015, confirmed Child A's allegation of sexual
abuse against Appellant Cory Sato, Child A's step-father.[1]  Sato

---

[1]  According to the Notice sent by DHS to Sato on April 20, 2015, informing Sato that DHS had received a report that he was the perpetrator of child abuse and/or neglect, DHS stated that it had completed its investigation and assessment under chapters 350 and 587, Hawaii Revised Statutes ("HRS"), and had confirmed the allegations.  Addressing the consequences of that confirmation, the Notice explained that:

> This information will be entered into the DHS database to assist in future risk and safety assessments.  The information <u>may be used</u> in the future with your informed consent, or as provided by Federal and State laws and DHS

(continued...)

appealed and, on March 8, 2016, the Circuit Court of the First Circuit ("Circuit Court")[2/] issued its Order Affirming Administrative Hearing Decision Dated September 16, 2015 ("Order Affirming Decision") and its corresponding Judgment in favor of Appellee DHS and against Sato. In this secondary appeal, Sato appeals from the Order Affirming Decision and the Judgment.

On appeal, Sato alleges that (1) DHS violated his due process rights when it failed to afford him an opportunity to confront and cross-examine its witnesses, and (2) the Hearing Officer's decision was not based on reliable, probative, and substantial evidence.

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Sato's points of error as follows and affirm:

(1) Sato contends that his due process rights were violated when DHS failed to give him an opportunity to confront and cross-examine its witnesses. Sato argues that he did not waive his constitutional due process right to confront and cross-examine DHS' witnesses because there is no clear and convincing evidence of a waiver that was voluntary, knowing, and intelligent; and that he "*may not have known* that he had a right to subpoena, confront, and cross-examine the witnesses crucial to his defense." (Emphasis in original.) To this end, Sato stresses that he was unrepresented by counsel; was never informed of any witnesses that would or would not be brought by DHS at the hearing; was never informed of his right to subpoena, confront, or cross-examine witnesses besides the multiple, overbroad citations to HRS section 91 and Hawaii Administrative Rules ("HAR") section 17; and was referred twice to HAR sections 17-602.1-1 and 17-602.1-17, which Sato asserts are inapplicable. Sato further argues that even if he waived his right to cross-

---

[1/] (...continued)
 Rules, for a background check for employment or if you apply for licensure as a foster parent or child care provider.

[2/]  The Honorable Rhonda A. Nishimura presided.

examination, this court may *sua sponte* raise the issue on the basis of plain error.

In sum, Sato's due process claim stems from his failure to subpoena DHS' non-testifying witnesses, which he attributes to the alleged lack of guidance provided by DHS' Notice of Administrative Hearing and Acknowledgment of Request for Hearing. More specifically, Sato argues that DHS failed to reference the appropriate subsections of the relevant statutes and rules or to apprise him of his right to subpoena, confront, or cross-examine under HRS section 91-10(3)[3/] and HAR section 17-2-16(6).[4/]

Hawaiʻi has recognized that "[t]he general rule that an appellate court will consider only such questions as were raised and reserved in the lower court applies to judicial review of administrative determinations and precludes appellate consideration of questions or issues not raised *in the administrative proceedings*." *Ariyoshi v. Hawaii Pub. Emp't Relations Bd.*, 5 Haw. App. 533, 544-45, 704 P.2d 917, 926 (1985) (emphasis added) (citing *Waikiki Resort Hotel, Inc. v. City & County of Honolulu*, 63 Haw. 222, 250, 624 P.2d 1353, 1372 (1981)). The principle underlying this rule is that "a reviewing court usurps the agency's function when it sets aside the administrative determination upon a ground not theretofore

---

[3/]    The statute provides, in pertinent part that

[i]n contested cases:

. . . .

    (3)    Every party shall have the right to conduct such cross-examination as may be required for a full and true disclosure of the facts, and shall have the right to submit rebuttal evidence[.]

Haw. Rev. Stat. § 91-10(3) (2012).

[4/]    The rule provides, in pertinent part:

    The parties or their authorized representative shall have an opportunity to:

. . . .

    (6)    Question or refute any testimony or evidence, and confront and cross examine any witness.

Admin. R. § 17-2-16(6).

presented to the agency and deprives the agency of an opportunity to consider the matter, make its ruling, and state the reasons for its action." *Ariyoshi*, 5 Haw. App. at 545, 704 P.2d at 926. Accordingly, if a litigant preparing for an administrative contested case hearing has an objection to procedural irregularities, he or she must raise the issue prior to or during the proceeding. *See Takahashi v. Tanaka*, 10 Haw. App. 322, 329, 871 P.2d 796, 799 (1994) (holding that a district court did not err in declining to consider argument for the first time on appeal when appellant did not appear at the scheduled administrative hearing); *Ariyoshi*, 5 Haw. App. at 545, 704 P.2d at 926-27 (refusing to address the merits of petitioners' case because they did not file objections or seek a hearing). Waiver of an issue not raised at the administrative level applies even to constitutional issues when appellant is not challenging the constitutionality of a statute or other rule. *Perry v. Bd. of Trs. of Emps. Retirement Sys.*, No. CAAP-11-0000052, 2012 WL 1382476, at *11 (Haw. Ct. App. Apr. 20, 2012) (holding that Perry waived his Contract Clause claim because he failed to raise the claim before the administrative agency).

At the administrative level, Sato failed to raise any due process issues, let alone his right to cross-examine and confront DHS' witnesses under HRS section 91-10(3) and HAR section 17-2-16(6). Prior to the August 11, 2015 administrative hearing, DHS sent Sato an Acknowledgment of Request for Hearing, dated July 8, 2015, directing him to the relevant rules—HAR Title 17 and HRS Chapter 91—and notified him of his right to counsel at the hearing; a Notice of Administrative Hearing, with a mailing date of July 23, 2015, directed him to HAR chapter 17-2[5/] and informed him that he could "bring legal representatives or witnesses to speak on [his] behalf";[6/] and importantly, an

---

[5/]      HAR Chapter 17-2 includes § 17-2-16(6) which provides that the parties have the opportunity to question or refute testimony or evidence and to confront witnesses, and § 17-2-13 which states in relevant part that "[u]pon timely written request, the director or hearing officer may issue subpoenas requiring attendance of witnesses . . . at a hearing."

[6/]      This court has previously recognized that

(continued...)

4

Internal Communication Form ("ICF"), attached to the Notice of Administrative Hearing, which expressly informed Sato of the issue and facts at large, the rules supporting DHS' actions, DHS' position on the issue, and the DHS representatives assigned to the case. In response, Sato came prepared to the administrative hearing with a written statement addressing the subject issue and relevant facts.

During the hearing, Sato called a family friend, Priscilla Kaapana-Bates, as a witness. Kaapana-Bates came prepared with a written statement which reflected her answers to Sato's detailed questions into the alleged sexual abuse against Child A and the circumstances surrounding the incident. After Kaapana-Bates finished testifying—which included questions by DHS Social Worker Miliama Iloilo, Child Welfare Services Supervisor Hinda Diamond, and the Hearing Officer—the Hearing Officer asked Sato if he had any other witnesses, to which Sato replied "[n]o." The Hearing Officer then asked Sato if he had "[a]nything further? Do you have anything else you wanted to offer?" Sato again replied "[n]o." Sato did not ask Iloilo or Diamond any questions, did not inquire as to the absence of any witnesses or

---

6/ (...continued)
the Hawaiʻi Supreme Court held that a notice of hearing that omitted "involved" statutes and rules under HRS § 91-9(b) did not violate due process. [*Pilaʻa 400, LLC v. Bd. of Land & Natural Resources*, 132 Hawaiʻi 247, ]270-73, 320 P.3d [912,] 935-38 [(2014)] (citations omitted) (holding that because the record demonstrated that appellant was "fully apprised of all relevant issues that were to be determined in the contested case hearing" and was "able to present a complete and vigorous defense" to the charges, appellant could not complain of faulty notice under HRS § 91-9(b)).

In Hawaiʻi, courts focus their due process inquiries on "whether notice has actually been provided, which may be determined by looking to other communications between the parties." *Id.* at 272, 320 P.3d at 937. Accordingly, a hearing notice satisfies the requirements of both due process and HRS § 91-9(b) when the party served "had a meaningful opportunity to be heard and to contest the administrative agency's ultimate decision." *Id.* at 273, 320 P.3d at 938.

*Valdez v. State, Dept. of Human Services Admin. Appeals Office*, No. CAAP-12-0000121, 2014 WL 7190243, at *2 (Haw. Ct. App. Dec. 17, 2014) (original brackets omitted). As evidenced by Sato's three-page response to the IFC and his detailed questioning of a family friend, Sato had a meaningful opportunity to be heard and to contest the administrative agency's ultimate decision. *See infra.*

issues relating to the subpoena process, did not raise the issue
of confronting adverse witnesses, and did not request a
continuance of the hearing.

Furthermore, Sato explained that prior to the
administrative hearing he had been through a more formal
adjudicatory process, having had two criminal proceedings brought
against him based on the same allegations of sexual abuse to
Child A.  The criminal charges against Sato had been dismissed
due to the unavailability of Child A and percipient witnesses.[7/]

Before the Circuit Court, Sato argued that his right to
cross-examine and confront DHS' witnesses was violated, but on
grounds other than those presented now on appeal.  Sato did not
argue that his right to cross-examine or confront witnesses was
due to DHS' insufficient notice; rather, he argued that under HRS
section 91-10(3) and HAR section 17-2-16(6), DHS was required to
call as witnesses Child A, Dr. D. Paperny, DHS Section
Administrator David Kam, and Honolulu Police Department Detective
Elizabeth Rockett so that Sato could cross examine or confront
them; and that under HAR sections 17-2-12(1) and (2), the Hearing
Officer had the power to issue subpoenas and should have
exercised that power to call its witnesses so that Sato would
have had the opportunity to cross examine or confront them.
Because Sato failed to raise any issue with the alleged
insufficiencies of DHS' notice, the Circuit Court concluded only
that "[t]he hearing decision did not violate any constitutional
or statutory provisions because there is no statute or rule that
mandates that DHS bring any witnesses to the hearing."  This
court is confined to the briefs submitted to the Circuit Court
and the Order Affirming Decision in assessing whether this issue
was raised because Sato failed to include the transcripts from
the Circuit Court proceedings in the record on appeal.  *See State
v. Hoang*, 93 Hawai'i 333, 334, 3 P.3d 499, 500 (2000) ("Without

[7/]    Although Sato contends that DHS did not make it clear that he had
a right to confront and cross-examine these witnesses and Child A, he appeared
*pro se* at the administrative hearing, he had access to legal assistance during
DHS' investigation and during his criminal proceedings, and was not unfamiliar
with the legal process.  Furthermore, as noted *supra* n.5, DHS referred Sato to
the administrative rules about his right to subpoena witnesses, refute
evidence and confront witnesses.

the . . . transcript . . . this court does not[] have a basis upon which to review the point of error raised in the present appeal." (citing *Bettencourt v. Bettencourt*, 80 Hawai'i 225, 231, 909 P.2d 553, 559 (1995))).

Accordingly, because Sato failed to raise the issue of his right to cross examine and confront DHS' non-testifying witnesses under HRS section 91-10(3) and HAR section 17-2-16(6) based on DHS' alleged deficient notice at the administrative and Circuit Court levels this issue was waived.

(2) Sato contends that the Hearing Officer relied on evidence that was not reliable, probative, and substantial as required to support his findings. Sato argues that Child A's statement is not reliable, probative, or substantial evidence because Child A had a motive to lie; that there is no indication in the CPS intake document of who reported this information, when it was reported, or how it was reported; and that the Hearing Officer's reasons for finding Child A credible are not reliable. Sato additionally argues that Iloilo's testimony is not reliable, probative, or substantial evidence because it was hearsay.

"An agency's findings are not clearly erroneous and will be upheld if supported by reliable, probative and substantial evidence unless the reviewing court is left with a firm and definite conviction that a mistake has been made." *Fratinardo v. Emps' Ret. Sys. of State of Hawaii*, 129 Hawai'i 107, 110, 295 P.3d 977, 980 (App. 2013) (quoting *Brescia v. North Shore Ohana*, 115 Hawai'i 477, 491-92, 168 P.3d 929, 943-44 (2007)) (internal quotation marks omitted). When a mixed question of fact and law is presented—that is, when the conclusion is dependent on the facts and circumstances of a particular case, which is also reviewed under the clearly erroneous standard—"an appellate court must give deference to the agency's expertise and experience in the particular field" and "should not substitute its own judgment for that of the agency." *Igawa v. Koa House Rest.*, 97 Hawai'i 402, 406, 38 P.3d 570, 574 (2001) (internal quotation marks omitted) (quoting *In re Water Use Permit Applications*, 94 Hawai'i 97, 119, 9 P.3d 409, 431 (2000)). Similarly, appellate courts decline to re-weigh the

evidence presented to a hearings officer or an agency. *See In re Application of Hawaiian Elec. Co.*, 81 Hawaiʻi 459, 465, 918 P.2d 561, 567 (1996) ("[C]ourts decline to consider the weight of the evidence to ascertain whether it weighs in favor of the administrative findings, or to review the agency's findings of fact by passing upon . . . conflicts in testimony. . . .") (citing *In re Hawaii Electric Light Co.*, 60 Haw. 625, 629, 594 P.2d 612, 617 (1979)).

Sato argues that the Hearing Officer's determination hinged on Child A's credibility and challenges the Hearing Officer's Ultimate Finding of Fact ("UFOF") 100, finding "the testimony of CHILD A to be credible." To this end, he highlights the following from the portion of the Decision under the Discussion heading:

> [Sato] denies all the allegations. Thus, this case turns on the testimony of CHILD A. I find that CHILD A is a reliable witness. (Exhibit 4.) CHILD A reported this incident on three occasions: to Dr. Paperny (on 12/17/13); to Detective Rockett (12/17/13); and to CWS SW M. Iloilo (12[/]18/13). CHILD A's description of the events is consistent. The testimony given by CHILD A at her three interviews were descriptive and consistent. Although [Sato] alleges that CHILD A is lying, I see no evidence to support his allegation that she is lying.

Sato contends that Child A's testimony is unreliable because Child A had a motive to lie about the accusation.

It appears that Sato is pointing to a portion of the transcript in which his witness, Kaapana-Bates, testified that Child A's mother mentioned that Child A had separation anxiety whenever her mother left her to go to training and that Child A was grounded a few days earlier. Although Kaapana-Bates expressed some concern over Child A's credibility, she also acknowledged that "I don't know [Child A] to [lie about] something this serious."[8] Moreover, the Hearing Officer further stated in the Decision's Discussion, "[a]lthough Ms. Kaapana-Bates questions the truthfulness of CHILD A's statements, Ms. Kaapana-Bates['] actions indicate that she was more concerned about [Sato] than CHILD A." Notwithstanding Kaapana-Bates'

---

[8] Likewise, when Diamond asked Sato if Child A had "fabricated anything about [him] before," Sato replied "[n]ot that I know of . . . That was the first time, yeah."

testimony, this court is not permitted to re-weigh evidence and make credibility determinations. *See In re Application of Hawaiian Elec. Co.*, 81 Hawai'i at 465, 918 P.2d at 567.

Furthermore, Child A's statements offered at the hearing were statements she made to her mother and to Detective Rockett. More importantly, those statements were consistent with what she told Dr. Paperny at the SATC examination and were corroborated by the physical evidence found in the SATC report. Sato's narrow reading of the Decision and UFOF 100 fails to address UFOF 101 which finds that "the examination results are consistent with CHILD A's allegation" and that "these results [are] particularly persuasive." The Decision's Discussion states that

> [t]he laceration of the hymen and the bruising in the genital area are "facts" consistent with the allegation of sex abuse. Also, consistent is CHILD A complaining of pain in her genital area. There is powerful physical evidence that CHILD A suffered such a Trauma. [Sato] offers no evidence as to how CHILD A suffered these physical injuries.

Sato therefore fails to demonstrate that Child A's statements were not reliable, probative, or substantial evidence.

Sato calls into question Iloilo's hearsay statements because, he contends, Iloilo merely read into the record Kam's summary (i.e., the ICF) of what Child A might have reported to Detective Rockett during that interview. Sato's argument is without merit. First, "the rules of evidence in administrative hearings, unlike those applicable to judicial proceedings, allow admission of hearsay evidence." *Price v. Zoning Bd. of Appeals of City & Cty. of Honolulu*, 77 Hawai'i 168, 176, 883 P.2d 629, 637 (1994) (citing *Shorba v. Bd. of Educ.*, 59 Haw. 388, 397, 583 P.2d 313, 319 (1978)). Second, Iloilo conducted the investigation on behalf of DHS, not Kam. The record demonstrates that Iloilo interviewed Child A in-person, met with Child A's mother, met with Sato, and prepared the Log of Contacts which contained her investigative findings and which provided the basis for the IFC. The IFC is essentially a summary of the Log of Contacts. Sato therefore fails to demonstrate that Iloilo's testimony is not reliable, probative, or substantial evidence.

9

Therefore, Sato's second point is without merit.

Therefore, the Order Affirming Decision and the Judgment are affirmed.

DATED:  Honolulu, Hawaiʻi, April 26, 2019.


On the briefs:

Dennis W. King,
Megan K. Kau, and
Tristan S.D. Andres
(Deeley King Pang & Van Etten)
for Appellant-Appellant.

Heidi M. Rian and
Candace J. Park,
Deputy Attorneys General
for Appellee-Appellee.

Chief Judge

Associate Judge

Associate Judge